UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANNON C. PRINCE,

    Plaintiff,

  v.

APPLETON AUTO, LLC, et al.,

    Defendants.

Case No. 18-CV-1465

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Shannon C. Prince files this lawsuit against his former employer, Applecars, LLC, Appleton Auto, LLC, and Scott McCormick. (Docket # 17.) Prince alleges that he was discriminated against based on his race. The defendants have moved for summary judgment on Prince's claims against Appleton Auto because Prince was not employed by the company and against McCormick because Prince has not shown that McCormick violated Title VII. As to Prince's former employer—Applecars—the defendants move for summary judgment on the ground that Applecars is not an "employer" under Title VII of the Civil Rights Act of 1694 because it had less than fifteen employees in twenty or more calendar weeks during the relevant time period. (Docket # 24.) For the reasons below, the defendants' motion for summary judgment is granted and the case is dismissed.

### BACKGROUND FACTS

Prince was employed as a sales associate from February 2017 through July 25, 2017 with Applecars, LLC. (Am. Compl. ¶ 7, Docket # 17.) Applecars was formed for the purpose of operating a newly-created used car dealership in Appleton, Wisconsin.

(Declaration of Robert Scott McCormick ("McCormick Decl.") ¶ 2, Docket # 28.) Appleton Auto, LLC, is a limited liability company formed for the sole purpose of registering the tradename "Appleton Auto." (Defs.' Proposed Findings of Fact ("DPFOF") ¶ 6, Docket # 27 and Pl.'s Resp. to DPFOF ("Pl.'s Resp.") ¶ 6, Docket # 33; McCormick Decl. ¶ 5.) Appleton Auto has never had any employees or operations and permits Applecars to use its tradename. (Pl.'s Resp. ¶ 6 and Defs.' Reply to Pl.'s Resp. ¶ 6, Docket # 40.) Thus, Applecars does business as Appleton Auto. (McCormick Decl. ¶ 2.)

Applecars is affiliated with four other Wisconsin used car dealerships in four different cities: Wausau Auto, Antigo Auto, Green Bay Auto, and La Crosse Auto. (DPFOF ¶¶ 13–17.) The defendants assert that each dealership is independently and exclusively owned and operated by its own duly-formed Wisconsin limited liability company created to operate a used car dealership in a particular city. (*Id.*) Wausaup LLC does business as Wausau Auto. (McCormick Decl. ¶ 6; DPFOF ¶ 14 and Pl.'s Resp. ¶ 14.) Stewart 64 LLC does business as Antigo Auto. (McCormick Decl. ¶ 7; DPFOF ¶ 15 and Pl.'s Resp. ¶ 15.) Green Bay Auto, LLC does business as Green Bay Auto. (McCormick Decl. ¶ 8; DPFOF ¶ 16 and Pl.'s Resp. ¶ 16.) La Crosse Auto, LLC did business as La Crosse Auto. (McCormick Decl. ¶ 9; DPFOF ¶ 17 and Pl.'s Resp. ¶ 17.) La Crosse Auto ceased operation in 2019. (*Id.*) Capital M, Inc. is a Wisconsin corporation that provides management services to all the dealerships. (DPFOF ¶ 18 and Pl.'s Resp. ¶ 18; Pl.'s Proposed Findings of Fact ("PPFOF"), ¶¶ 2, 4–14, Docket # 33.)

McCormick owns 100% of Capital M, La Crosse Auto, and Green Bay Auto. (PPFOF ¶ 36 and Defs.' Resp. to PPFOF ("Defs.' Resp.") ¶ 36, Docket # 40.) McCormick effectively owns 80% of Wausaup; he individually owns 9.0688% of the company and

Capital M, which McCormick owns entirely, owns 70.9312%. (*Id.* ¶ 37.) McCormick owns 80% of Applecars and 56.4706% of Stewart 64. (*Id.* ¶ 38.) McCormick is the only officer of Applecars, Appleton Auto, Green Bay Auto, La Crosse Auto, Wausaup, Stewart 64, and Capital M. (*Id.* ¶ 39.)

The parties do not dispute that Applecars had only fifteen or more employees for eight full weeks in 2016 and for fifteen full weeks in 2017. (DPFOF ¶¶ 11–12 and Pl.'s Resp. ¶¶ 11–12.) Additionally, the parties do not dispute that if Green Bay Auto, Wausaup, or Stewart 64 were aggregated with Applecars in 2016 and 2017, Applecars would have fifteen or more employees for twenty or more weeks in each year. (PPFOF ¶ 43 and Defs.' Resp. ¶ 43.) Similarly, the parties agree that if La Crosse Auto were aggregated with Applecars in 2017, then Applecars would have fifteen or more employees for twenty or more weeks. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the

ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Prince alleges that his employer discriminated against him based on his race in violation of Title VII. As an initial matter, the defendants assert that summary judgment must be granted in favor of McCormick and Appleton Auto because Appleton Auto never employed Prince and because Prince does not assert that McCormick violated Title VII. (Defs.' Br. at 25–26, Docket # 26.) Prince does not address the defendants' arguments as to Appleton Auto and McCormick. (Pl.'s Br. in Opp., Docket # 31.) Thus, Prince concedes these arguments. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned). Even so, Prince does not dispute that McCormick was not involved in the decision to fire him, nor does he dispute that McCormick was unaware of Prince's discrimination claim until after his employment with Applecars ended. (DPFOF ¶¶ 46–47 and Pl.'s Resp. ¶¶ 46–47.) Further, Prince does not dispute that Appleton Auto never had any employees or

4

operations. (DPFOF ¶ 6 and Pl.'s Resp. ¶ 6.) Thus, summary judgment is granted in favor of McCormick and Appleton Auto.

The sole question before me, then, is whether Applecars meets the definition of "employer" under Title VII. To be considered an "employer" under Title VII, one must have fifteen or more employees for twenty or more calendar weeks in the current or preceding calendar year. *See* 42 U.S.C. § 2000e(b). Again, the parties do not dispute that Applecars, on its own, does not meet this definition in either 2016 or 2017. (DPFOF ¶¶ 11–12.) Additionally, the parties do not dispute that if Applecars were aggregated with several of the other entities, it would meet Title VII's definition of "employer" in both years. (PPFOF ¶ 43 and Defs.' Resp. ¶ 43.)

"[T]iny employers" are exempted from antidiscrimination laws "not to encourage or condone discrimination" but to "spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail." *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940 (7th Cir. 1999). The *Papa* court explained that there are three situations in which the policy behind the exemption of the small employer is vitiated by the presence of an affiliated corporation: (1) where the traditional conditions are present for "piercing the veil" to allow a creditor, voluntary or involuntary, of one corporation to sue a parent or other affiliate; (2) where an enterprise splits itself up into a number of corporations, each with fewer than the statutory minimum number of employees, for the express purpose of avoiding liability under the discrimination laws; and (3) where the parent corporation might have directed the discriminatory act, practice, or policy of which the

employee of its subsidiary was complaining. *Id.* at 940–41. Prince proceeds only on a "piercing the veil" theory for aggregation. (Pl.'s Br. in Opp.)

Determining whether the corporate veil should be pierced is governed by state law. *See Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 364 (7th Cir. 2016). Thus, I look to Wisconsin law, as the entities at issue are all Wisconsin limited liability companies.[1] Wisconsin law "recognizes that 'the corporation is a separate entity and is treated as such under all ordinary circumstances.'" *Fontana Builders, Inc. v. Assurance Co. of Am.*, 2016 WI 52, ¶ 62, 369 Wis. 2d 495, 529, 882 N.W.2d 398, 414 (quoting *Consumer's Co-op. of Walworth Cty. v. Olsen*, 142 Wis. 2d 465, 474, 419 N.W.2d 211 (1988)). Piercing the corporate veil is appropriate only when "'applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim.'" *Id.* (quoting *Olsen*, 142 Wis. 2d at 475, 419 N.W.2d 211). Wisconsin courts will not disregard the corporate fiction lightly; thus, the corporate fiction must not "give way whenever a [corporation] fails to precisely observe corporate formalities." *Olsen*, 142 Wis. 2d at 475, 419 N.W.2d 211; *see also Papa*, 166 F.3d at 943 ("The corporate veil is pierced, when it is pierced, not because the corporate group is integrated . . . but (in the most common case) because it has neglected forms intended to protect creditors from being confused about whom they can look to for the payment of their claims.").

Prince points to the following overlap between the dealerships as evidence the corporate veil should be pierced: Capital M provides management services to the

---

[1] Wisconsin courts look to the law governing corporations when analyzing the company form of limited liability companies. *See* Wis. Stat. § 183.0304(2) (stating that "nothing in this chapter shall preclude a court from ignoring the limited liability company entity under principles of common law of this state that are similar to those applicable to business corporations and shareholders in this state and under circumstances that are not inconsistent with the purposes of this chapter"); *Schaefer v. Orth*, 2018 WI App 35, ¶ 16 n.2, 382 Wis. 2d 271, 915 N.W.2d 730 (noting that language in Wis. Stat. § 183.0304(2) "appears to be a reference to the common law doctrine of piercing the corporate veil").

dealerships, including marketing, financial, accounting, leadership, and payroll services (PPFOF ¶¶ 2, 4–14); it also tracks inventory, stores personnel records, and issues an employee handbook (*id.* ¶¶ 5, 9, 11); Capital M's operations manager James Juel is responsible for hiring, promoting, and/or terminating each dealership's general manager (*id.* ¶¶ 15, 17–19); McCormick owns several federal trademarks, including "199ride," "199ride.com," and "LOCAL CARS & TRUCKS 199ride.com," that the dealerships all use for advertising on a single website (*id.* ¶¶ 26–35); and McCormick is the majority owner (either directly or indirectly) of all the dealerships (*id.* ¶¶ 36–42).

But the Seventh Circuit has explicitly declined to pierce the corporate veil despite this type of overlap. In *Papa*, the court explained that "[f]irms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies, whether by contract or by ownership." 166 F.3d at 942. Thus, a small firm will many times consult an outside law firm instead of having in-house counsel, hire an accounting firm to do its payroll, or seek business advice from outside companies. *Id.* The *Papa* court found that it did not matter if the "tiny employer gets his pension plan, his legal and financial advice, and his payroll function from his parent corporation without contractual formalities, rather than from independent contractors." *Id.* This type of integration does not "pierce the corporate veil." *Id.* at 943.

Subsequent to *Papa*, the Seventh Circuit declined to pierce the corporate veil under Indiana law even when two corporations did "a fair amount of sharing." *Bridge*, 815 F.3d at 364. The companies shared similar names (New Holland Longansport and New Holland Rochester); directors; certain employees' services; centralized health insurance benefits; the same address on their tax returns; and a website. *Id.* The court found that while these facts

7

"bespeak[ ] a certain degree of integration," it "does not suggest [ ] a misuse of corporate form." *Id.*

Other judges in this district, while applying the law of Illinois and Indiana (which is not materially different from Wisconsin law on veil piercing), have similarly found such levels of integration did not warrant piercing the corporate veil to aggregate companies for Title VII purposes. *See, e.g.*, *Wilson v. Comtrust LLC*, 249 F. Supp. 2d 993, 997–98 (N.D. Ill. 2003) (finding no Title VII aggregation when multiple companies were created by the same person, refer to each other jointly on letterhead, use the same accounting firm, and share employees, a supervisor, and an office building); *Macrito v. Events Exposition Servs. Inc.*, No. 09 C 7371, 2011 WL 5101712, at *4 (N.D. Ill. Oct. 21, 2011) (finding no Title VII aggregation when the two companies share a president and payroll coordinator, operate and receive phone calls out of the same address, work together on special events, and hold themselves out as "sister" companies on the internet); *Walker v. Macra Const. Inc.*, No. 02 C 3285, 2003 WL 297529, at *4 (N.D. Ill. Feb.11, 2003) (finding no Title VII aggregation when two companies operate out of the same building, are owned by members of the same family, share a business telephone number, and employ the same person to answer telephone calls and prepare payroll and quarterly reports); *Atkins v. JAD Hosiery, Inc.*, No. 99 C 4055, 2000 WL 988534, at *3 (N.D. Ill. July 17, 2000) (finding no Title VII aggregation when the entities "were interrelated in that they all sold and marketed the same product, shared a corporate logo, shared directors and officers, and conducted some inter-office business").

Further, McCormick avers, and Prince does not put forth facts in dispute, that while Capital M provides "certain back-office services to the Dealerships," the individual

dealerships are separately billed and separately pay for these services, including payroll, accounting, website-hosting, consulting, and tax services. (McCormick Decl. ¶ 13.) The dealerships pay for use of the "199ride," "199ride.com," and "LOCAL CARS & TRUCKS 199ride.com" trademarks. (*Id.* ¶ 14.) Additionally, Applecars, like all of the dealerships, has its own general manager; maintains its own bank accounts; maintains separate financial reports; files and pays its own taxes; pays its own employees; issues its own W2 for its own employees; maintains its own property; enters into its own contracts for business purposes[2]; and pays for its own marketing and advertising. (*Id.* ¶ 11.) These characteristics are indicative of proper entity organization. *See Bridge*, 815 F.3d at 365 (noting creditors would not be confused despite the degree of integration because each corporation had, for example, separate bank accounts, filed separate tax returns, operated out of different locations, and were managed individually).

The case law does not support that companies must have only "slightly intertwined operations" to avoid aggregation under Title VII, as Prince suggests. (Pl.'s Br. in Opp. at 10.) Rather, as the court noted in *Bridge*, companies can do "a fair amount of sharing" without losing their limited liability. Piercing the corporate veil is a high standard to meet and is only appropriate when the corporate fiction is used to accomplish fraud or defeat some strong equitable claim, usually by confusing creditors as to who they can look to for the payment of their claims. *See Papa*, 166 F.3d at 943. Prince has come forth with no

---

[2] Prince argues that the dealerships' general managers cannot bind "the company" to contracts. (PPFOF ¶ 16.) While I acknowledge McCormick does testify, "To the best of my knowledge, no," to the question "Can the general manager of a dealership bind the company to contracts?" This question is vague as to who "the company" is and as to what type of "contracts" counsel was referring to. McCormick clearly expressed confusion as to counsel's question. (Declaration of Ryan M. Billings ¶ 10, Ex. G, Deposition of Robert Scott McCormick at 20, Docket # 30-8.) Further, McCormick had earlier testified in his deposition that the dealership sets the price of the car at the time of sale and that each individual dealership "does their own deal." (McCormick Dep. at 14–15, Docket # 34.) So clearly McCormick is not testifying that the dealerships cannot enter into contracts for the sale of vehicles, which is the primary business of each dealership.

evidence to support his position that Applecars' corporate veil should be pierced. Thus, Prince has not shown that Applecars' employees should be aggregated with any of the other dealerships. Without the statutorily required number of employees for the requisite number of weeks in either relevant year, Applecars is not considered an "employer" under Title VII and thus Title VII does not apply. For these reasons, the defendants' motion for summary judgment is granted in favor of Applecars.

## CONCLUSION

Prince sues his former employer, Applecars, as well as Appleton Auto and McCormick, alleging race discrimination. Prince does not dispute that Appleton Auto and McCormick should be dismissed from the case, and the record evidence supports this conclusion. Further, although Prince acknowledges that Applecars fails to meet the statutory definition of "employer" under Title VII on its own, he argues that it should be aggregated with several other limited liability companies to meet the statutory requirement. Prince fails to put forth evidence, however, to support his position that Applecars' corporate veil should be pierced to allow such aggregation. For these reasons, the defendants' motion for summary judgment is granted and the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that the clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of December, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge